STATE of Wisconsin, Plaintiff-Respondent,

v.

Marquis O. GILLIAM, Defendant-Appellant.†

Court of Appeals

*No. 99–1262–CR. Submitted on briefs February 11, 2000.—Decided June 15, 2000.*

## 2000 WI App 152

(Also reported in 615 N.W.2d 660.)

1

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert B. Rondini* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Jeffrey J. Kassel,* assistant attorney general.

Before Eich, Vergeront and Roggensack, JJ.

¶ 1. VERGERONT, J.   This appeal raises a single issue: whether the circuit court erred in denying defense counsel's motion to remove a juror for cause on the ground of subjective bias. Marquis Gilliam seeks reversal of the judgment of conviction for first-degree intentional homicide while using a dangerous weapon in violation of WIS. STAT. §§ 940.01(1) and 939.63(3) (1997–98),[1] contending that he should not have had to use a peremptory strike to remove Juror Marc Hagen from the jury, because Hagen's answer to defense counsel's question showed manifest bias. We conclude the trial court's finding that defense counsel failed to establish that Hagen was subjectively biased is not clearly erroneous, and we therefore affirm.

## BACKGROUND

¶ 2.   After the prospective jurors were sworn and each had given personal background information, the court informed them of the charge against Gilliam: causing death with intent to kill while armed with a dangerous weapon. The court questioned the jurors on their ability to understand and follow various instructions and explained the law on the rights of the accused. The court also inquired into the jurors' acquaintance with persons involved in the trial and their familiarity with the case. Following the prosecutor's questioning, the defense counsel began his voir dire, which included explaining to the jury that the case involved an incident at an after-hours club; the man who died was a bouncer; he died from gunshot wounds, having been shot four times; and self-defense was an issue in the case. This exchange then occurred:

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[DEFENSE COUNSEL]: You're going to obviously find out something based on what I just told you. That Marquis Gilliam had a gun. Is there anyone on the jury panel who feels that the fact that he had a gun with him when this happened means that he must be guilty of some sort of criminal offense?

[DEFENSE COUNSEL]: Yes? Yes, Mr. Peritz. You think the fact that he had a gun makes him guilty of a crime?

JUROR PERITZ: Yes, I do.

[DEFENSE COUNSEL]: The crime is — I just have to follow up. Given that that's how you feel and recognizing that the charge here is a homicide charge, first degree intentional homicide, do you — And that's the only charge. You're only going to be talking about a homicide charge in this case.

Do you feel that you shouldn't be sitting as a juror in this case and do you think that you can listen to the evidence on that charge, a homicide charge, and put aside your feelings on the [sic] whether he's guilty of a gun offense just for having a gun? It's a difficult question?

JUROR PERITZ: I'm not sure because of the fact that he wasn't protecting himself. I'm assuming he did not live there.

[DEFENSE COUNSEL]: It's an after hours club. Nobody lived there.

JUROR PERITZ: Right.

[DEFENSE COUNSEL]: Okay.

JUROR PERITZ: I'd be apprehensive to answer yes to that.

[DEFENSE COUNSEL]: All right. The question is — And I appreciate your honesty because that's the purpose of this is to, you know — Do you think —

4

and I can't answer this for you. You're the only one who can answer for yourself. Do you — Does that fact by itself mean that you then would have difficulty following the judge's instruction saying the State has to prove the elements of this offense beyond a reasonable doubt? Could you fairly do that, or does your honest feeling, just the fact that he was there with the gun, create in your mind a presumption of guilt or —

JUROR PERITZ:   I believe I'd find him guilty.

[DEFENSE COUNSEL]:   Is there anyone on the jury panel that feels the same way?

. . . .

[DEFENSE COUNSEL]:   . . . Mr. Hagen . . . You would answer the question the same way as Mr. Peritz?

JUROR HAGEN:   You shouldn't carry a gun in your pocket anyway. It's illegal. I own guns. I own a whole collection, but I don't carry them.

[DEFENSE COUNSEL]:   So your answer would be the same as Mr. Peritz?

JUROR HAGEN:   Probably.

[DEFENSE COUNSEL]:   Anyone else? Mr. Vogel?

JUROR VOGEL:   If he had a license to carry a concealed weapon —

[DEFENSE COUNSEL]:   There are no such licenses in Wisconsin. It's agreed he did not have a license.

JUROR VOGEL:   Then he shouldn't have been carrying a gun.

[DEFENSE COUNSEL]:   I understand that. Mr. Peritz was very honest, and he said that fact would cause him to think that Mr. Gilliam was guilty of a

crime and, therefore, he'd be more likely to vote guilty in this case. Do you feel the same way?

JUROR VOGEL: I don't know. I think I'd have to hear the evidence.

[DEFENSE COUNSEL]: Okay.

JUROR SIMONS: It was like a two-part question. You asked if I thought it was illegal for him to be carrying a gun. Yes, I do. But I think I could listen to the evidence that's applied and reason from that. Follow the judge's order.

[DEFENSE COUNSEL]: Okay. We agree that, yeah, he committed that crime. Now, we are here to try the homicide. You'll listen to the evidence and the law on the homicide charge?

JUROR SIMONS: Okay.

[DEFENSE COUNSEL]: Who on the jury panel agrees with Ms. Simons?

JUROR HARPER: What was the question?

[DEFENSE COUNSEL]: Ms. Simons said she may think he's guilty of a crime for having the gun, but she'd view the facts and the evidence on a homicide case independently. One doesn't make him being guilty of— One doesn't make him being guilty of the other.

JUROR HARPER: May I ask a question of you?

[DEFENSE COUNSEL]: Sure.

JUROR HARPER: If it's not a crime to carry a gun —Are you asking us do we think he's wrong to carry a gun? Is that leading us to say he's doing something wrong when it's wrong?

[DEFENSE COUNSEL]: I can't instruct you on the law.

6

JUROR HARPER: Well, you just did.

[DEFENSE COUNSEL]: All right. If it was a crime to carry a gun —

JUROR HARPER: That's hypothetical. Is it or is it not?

[DEFENSE COUNSEL]: Well, the judge — It depends on the circumstances. That case isn't here.

JUROR HARPER: I said "if." Is it the law or not in Wisconsin?

[DEFENSE COUNSEL]: It's illegal to carry a concealed weapon, but not to have one. But I'm — What my concern is, is somebody on the jury panel who thinks that, "Hey, he had a gun and he shouldn't have had the gun and it's probably illegal for him to have a gun; therefore, he must be guilty of the homicide."

JUROR HARPER: Those are two different questions. If you're nesting one inside the other, you're leading us to give you an answer, one, and extrapolating from that and asking us both. I think I —

[DEFENSE COUNSEL]: I think I follow. You're being very precise. I appreciate that. If he committed a gun — Let's say we agree he committed a gun offense by having the gun, whatever the circumstances were. And if you believe that's true — We don't dispute that. Is that — Does that in your mind make him guilty of the homicide?

JUROR HARPER: Have to listen to the evidence on the homicide. Those are two different questions. They may be somewhat related, except that it isn't a law in Wisconsin, about carrying a gun, unless it's concealed.

7

[DEFENSE COUNSEL]: What if it was concealed? If it was concealed so, therefore, it was a law violation.

JUROR HARPER: That's a different law. That's a homicide. This is carrying a gun.

[DEFENSE COUNSEL]: Exactly. That's your view of what your job is here, right? Who agrees with Harper? Okay. A lot of people, but not everyone. Who doesn't agree with Harper? Now, nobody wants to take — Who doesn't understand? All right, all right. Let's — We need to end here. Is there anybody on this jury panel that thinks they understand the law of self-defense?

(No response)

[DEFENSE COUNSEL]: Good. You'll follow the laws of whatever the judge tells you?

(No response)

¶ 3. Defense counsel continued with voir dire on other issues, and, at the completion of the questioning, the court held a hearing in chambers to take up motions to strike jurors for cause, including the defense motions to remove Peritz and Hagen. Defense counsel argued that Peritz said he was predisposed to convict Gilliam of homicide and Hagen agreed with Peritz. The prosecutor responded that he was concerned about Peritz's hearing and that defense counsel's question was confusing and he did not think the jurors understood. The court granted the motion as to Peritz but denied it as to Hagen:

THE COURT: See, I don't think that's what he said, and I think that's where [the prosecutor] is coming from. I think that — I really think that those jurors got very confused until the one juror, I

think, straightened some people out. However, I would grant the request. Peritz. That is the name?

[DEFENSE COUNSEL]: Number 15. Ferd Peritz, Number 15.

THE COURT: I would grant the request. And part of it is that I'm watching him when some general questions were asked that might have rehabilitated him, and he just wasn't responding. Maybe he has a hearing problem. But I think that, based on the record that's been made, there is a basis for striking him for cause.

[DEFENSE COUNSEL]: Then the same argument with Mr. Hagen, who agreed with —

THE COURT: Well, I don't know that it is exactly the same argument, but I'll listen closely to what the attorneys have to say.

[DEFENSE COUNSEL]: I reiterate the argument I made, because I think it's the same issue.

[PROSECUTOR]: I believe that he did not respond in a fashion consistent with having his mind made up and unwilling to listen to the instruction. He was giving a hypothetical, which is interestingly —

. . . .

[PROSECUTOR]: Interestingly, we've been discussing with them whether carrying a gun is illegal, but he is charged with a crime while possessing a dangerous weapon, which makes it illegal. So we've actually debated something they're not going to be instructed on yet. We were going to instruct to a corollary on that hypothetical. I think the whole process has been confusing, and I'm sorry it took up as much time as he did. I don't think Mr. Hagen answered in a fashion in which he should be

9

excused for cause, and I think the Court should deny that request.

THE COURT: Denied.

¶ 4. Gilliam used one of his seven peremptory strikes to remove Hagen, and he was not a member of the jury that heard the case against Gilliam and returned a guilty verdict.

## DISCUSSION

■■■■

¶ 5. A defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Art. I, § 7 of the Wisconsin Constitution, as well as principles of due process. *See State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial. *See id.* The requirement that a juror be indifferent is codified in WIS. STAT. § 805.08(1).[2] The statute directs that "[i]f a juror is not indifferent in the case, the juror shall be excused." *Id.* Jurors are presumed impartial, and the challenger to that

---

[2] WIS. STAT. § 805.08(1) provides as follows:

**Jurors.** (1) QUALIFICATIONS, EXAMINATION. The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood or marriage to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of the objection. This section shall not be construed as abridging in any manner the right of either party to supplement the court's examination of any person as to qualifications, but such examination shall not be repetitious or based upon hypothetical questions.

presumption bears the burden of proving bias. *See State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990). If the circuit court errs in failing to dismiss a challenged juror for cause and as a result the defendant uses a peremptory strike to remove that juror, the defendant is entitled to a reversal and a new trial. *See State v. Ramos*, 211 Wis. 2d 12, 24–25, 564 N.W.2d 328 (1997); *see also State v. Ferron*, 219 Wis. 2d 481, 504–05, 579 N.W.2d 654 (1998) (declining State's request to overrule *Ramos*).

¶ 6.   The supreme court recently categorized and defined the three types of juror bias: subjective, objective and statutory. *See Faucher*, 227 Wis. 2d at 716. The parties agree that this case presents a question of subjective bias. "Subjective bias" refers to the prospective juror's state of mind and is "bias that is revealed through the words and the demeanor of the prospective juror." *Id.* at 717. A trial court's factual finding that a prospective juror is or is not subjectively biased will be upheld unless it is clearly erroneous. *See id.* at 718.

¶ 7.   Gilliam contends the record demonstrates that Hagen is subjectively biased because he stated he would probably find Gilliam guilty of homicide based on the fact that he was in possession of a gun at the time of the victim's death. The State responds that it is not clear from a complete reading of the record what Hagen's response of "probably" means, and that, given this ambiguity and our standard of review, we must affirm the circuit court's decision.[3]

¶ 8.   Because we are to affirm the circuit court's ruling on subjective bias unless it is clearly erroneous, we look first to the court's explanation for its ruling.

[3] The State presents alternative arguments, but it is unnecessary to address them.

Although the court denied the motion on Hagen immediately following the prosecutor's argument without an explanation at that time, the court's earlier comments reveal its view that the jurors were confused by defense counsel's questions until "the one juror . . . straightened some people out." We treat this as a finding of fact and we conclude it is supported by the record. We cannot agree with Gilliam that the record supports only one reasonable inference—that Hagen understood defense counsel intended to ask him whether he would find Gilliam guilty of homicide simply because he possessed a gun.[4]

¶ 9. Defense counsel's first question to which Peritz responded, asked whether any juror felt the fact that Gilliam had a gun meant he was guilty of "some sort of offense," instead of specifically referring to the first-degree intentional homicide charge in this case. His follow-up questions to Peritz were compound, used shifting phraseology, and contained digressions. He then asked Hagen whether he agreed with Peritz only by referring to Peritz's answer, without repeating a specific question. Hagen's first comments to defense counsel had to do with the illegality of carrying a gun in one's pocket, which was not something Peritz had mentioned; Hagen was apparently picking up on defense

---

[4] We emphasize here the importance of the circuit court clearly and fully explaining its reasoning for finding that a juror is or is not subjectively or objectively biased, since the appellate court has a deferential standard of review with respect to both categories of bias. *See State v. Faucher*, 227 Wis. 2d 700, 718–21, 596 N.W.2d 770 (1999) (discussing the standard of review for each). Such an explanation by the circuit court may avoid appeals on the issue, will facilitate our review if there is an appeal, and will avoid reversals because we are unable to understand why the trial court did what it did.

counsel's reference, in an earlier question to Peritz, to a "gun offense just for having a gun."

¶ 10. Defense counsel did not question Hagen further after he answered "probably" to the question whether he would answer an unspecified question the same as Peritz did. We therefore have no explanation from Hagen of what he understood defense counsel to be asking, or what he meant by his answer. However, we can tell from the record that at least three other jurors had questions about what defense counsel was asking. The next juror who spoke after Hagen commented initially on the legality of carrying a gun, and it was not until after Simmons said that defense counsel was "asking a two part question" and after Harper asked a series of questions in an attempt to understand what question defense counsel was posing, that defense counsel framed the question in a precise, complete way. We reject Gilliam's contention that, in evaluating the record, it is irrelevant how jurors after Hagen responded to defense counsel's questioning on the same topic. If other jurors had trouble understanding what defense counsel was getting at, it is reasonable to infer that Hagen had difficulty as well.

¶ 11. After defense counsel received an answer from Harper which showed Harper understood the question and could separate for himself the issue of whether Gilliam should have been carrying a gun from the issue whether Gilliam committed homicide with the gun, defense counsel asked the jurors if they agreed with Harper. Defense counsel observed "A lot of people, but not everyone," then asked "Who doesn't agree with Harper?" However, he did not indicate for the record who was not in agreement with Harper, although it appears from defense counsel's immediate shift to

another topic that no one raised a hand signifying disagreement.

¶ 12. We recognize that in the published cases concerning subjective bias, typically a juror has expressed a prejudice or predilection, and the issue is whether the juror's answers to follow-up questions show the juror is able and willing to set that aside and listen to the evidence and the instructions of the court. *See, e.g., Ferron*, 219 Wis. 2d at 487–89, 498. The circuit court's superior ability to judge the demeanor and credibility of jurors in answering the questions is the basis for the very deferential standard of review of determinations of subjective bias. *See Faucher*, 227 Wis. 2d at 718. In this case the issue is different—whether the juror has expressed a prejudice or predilection in the first instance. However, on this issue as well, the circuit court has a better ability than this court to assess the juror's response. With the complete transcript before us and the leisure to study defense counsel's questions and the jurors' answers, we can understand the question defense counsel *intended to pose* to the jurors. However, the circuit court, who was there at the time and heard defense counsel and saw and heard the jurors, has a better vantage point than this court from which to judge if and how defense counsel's questions were *understood* by the jurors, which is the critical issue. In addition, the court saw which jurors raised their hands to the questions about who did and who did not agree with Harper, something we cannot tell from the record.[5]

¶ 13. We do not agree with Gilliam that because the circuit court granted the motion to remove Peritz, it

---

[5] The court indicated it was watching Peritz when "general questions" were asked, and we presume it was watching the other jurors as well.

erred in not doing the same for Hagen. The court's comments indicate that, while it did view the questions to Peritz as well as to Hagen confusing, it did not view the questioning of the two the same in all respects, and that is supported by the record. Defense counsel asked Peritz several questions, and received answers from him that gave more information about his thinking than defense counsel received from Hagen. In addition, the record shows the court was concerned about Peritz's hearing, based on the court's own observations.

¶ 14.   Gilliam points out that the prosecutor did not object to defense counsel's confusing or ambiguous questions. However, the burden of establishing a juror's bias is on the party moving to remove a juror because of bias. *See Louis*, 156 Wis. 2d at 478. In order to establish bias, the questions to the jurors must be precise, and ambiguities must be clarified with follow-up questions. That did not happen with respect to Hagen. Accordingly, we conclude the circuit court did not err in finding that Gilliam had not established Hagen was subjectively biased.

*By the Court.*—Judgment affirmed.