COURT OF APPEALS
DECISION
DATED AND FILED

April 11, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1193-CR**

Cir. Ct. No. **2016CF1619**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

ALLEN EDWARD KINDT,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Allen Edward Kindt appeals from a judgment convicting him, following a jury trial, of repeated sexual assault of the same child

and incest. Kindt appeals his convictions and the denial of his postconviction motion on several bases, including claims of ineffective assistance of counsel, prosecutorial misconduct, erroneously admitted other-acts evidence, and he seeks a new trial in the interest of justice. For the reasons that follow, we affirm.

## BACKGROUND

¶2 In November 2016, the State charged Kindt with repeated sexual assault of a child and incest for committing three acts of sexual assault against Ava[1] during the fall of 2015 to the summer of 2016. During that time, Ava was nine and ten years old. In a recorded forensic interview, Ava disclosed that on these occasions, Kindt had rubbed her vaginal area with his hand over her clothes.

¶3 According to the criminal complaint, Brown County Child Protection Services (CPS) "had received a complaint [in] November 2015 regarding possible inappropriate contact between" Ava and Kindt, but the "referral was investigated by CPS at the time and no further action was taken and police were not notified." This allegation was then "revisited" as a result of a new complaint involving Kindt and another young relative, Sally, who was four years old.

¶4 Testimony at trial revealed that Sally came to law enforcement's attention when she "and two other children were at daycare and they were caught touching each other," and Sally then disclosed to a teacher that "touching" happened with Kindt. According to the complaint, Sally alleged that Kindt had

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms when referring to the victims in this case. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

"rubbed butter on her butt." Kindt was not criminally charged for the alleged conduct against Sally. However, the State did file a pretrial motion to admit Sally's allegations as other-acts evidence in the instant case, and the circuit court granted that motion.[2]

¶5      The circuit court held a three-day jury trial in June 2018. According to defense counsel's[3] opening statements, Kindt's defense theory was that the techniques used during Ava's forensic interview elicited a false accusation of sexual touching. The State called Green Bay Police Detective Cassandra Pakkala, who became involved with the investigation upon Sally's initial report to her daycare provider and who testified about her own experience interviewing children and observing child forensic interviews. The State also called Kristie Sickel, the child forensic interviewer who interviewed both Ava and Sally. Sickel testified regarding her experience and her training as well as the details of those interviews.

¶6      The recordings of Sickel's interviews of Ava and Sally were played for the jury. Sally, who was six years old at the time of the trial, testified briefly. Ava, who was twelve, also testified. Ava testified that Kindt put his hand on her "private parts" and "started rubbing it" on three occasions. She stated that the touching was always over her clothing. When asked why she did not disclose the inappropriate touching initially, she explained that she "was nervous and scared."

_____

[2] On April 20, 2017, a hearing on the State's other-acts motion was held before the Honorable Kendall M. Kelley. Thereafter, the case was assigned to the Honorable Marc A. Hammer, who presided over the trial.

[3] We refer to Kindt's trial counsel as "defense counsel" throughout this decision.

¶7    The State also called Ava's mother and father and Sally's mother to testify. Sally's mother testified about an incident that she saw occur between Kindt and Ava in October or November 2015. Sally's mother stated: "I was walking past [Kindt's] bedroom door…. [A]nd I saw [Kindt] on top of [Ava] in [Kindt's] bed and they were both clothed, but he was really close to her face, and I didn't hear them saying anything and I left." Sally's mother "thought … that was really weird," but "[t]hey always had a close relationship." She further explained that a couple weeks later she entered the living room at Kindt's home and saw Ava slouched down in the computer desk chair while Kindt was kneeling on the floor in front of her. Ava's legs were resting on Kindt's shoulders, and "his face [was] in her crotch area." Sally's mother reported the incident to CPS at the time.[4] Regarding Sally, her mother testified that Sally was toilet trained when she was "one-and-a-half, two," and Sally never had a diaper rash after she was a newborn, so there was no reason to need any "butt cream"—or something that resembles butter—applied to her buttocks by Kindt.

¶8    The State also called social worker Alyssa Jourdan to testify. Jourdan handled investigations of child abuse and neglect reports for Brown County Human Services. Jourdan testified about her own training and experience, and she was cross-examined at length about the protocol for child forensic interviews and Sickel's interview of Ava.

¶9    Susan Lockwood, the former director of the Sexual Assault Center in Brown County, also testified as an expert for the State. She stated that, in her

---

[4] This was the previous CPS report regarding Ava mentioned in the complaint, but Sally's mother stated that "they never called [her] or anything."

experience, delays in reporting child sexual assaults were very common, and that, when children are repeatedly assaulted, they often "get mixed up about what happened and when it happened." She further testified that it is "fairly common for [a sexual assault victim] to deny something had happened repeatedly and then finally disclose" because "they have been telling themselves that it didn't happen. But also because they don't want to talk about it. It's too embarrassing or they worry about … what are the repercussions of that going to be and so they continue to deny."

¶10    Kindt called his wife, Mary Beth Kindt, to testify. Mary Beth stated that she had never seen Kindt touch Ava inappropriately, but she admitted on cross-examination that there were times when Kindt was home with Ava when she was not there. Mary Beth also admitted that Sally had once told her that Kindt had touched Sally inappropriately. Kindt's eleven-year-old daughter also testified for the defense, stating that she never saw her father touch Ava or Sally inappropriately.

¶11    Finally, Kindt testified in his own defense. According to Kindt, Sally had rashes "after she was out of diapers" because she "had a problem wiping after [going] number two," and so he and Mary Beth put Desitin on her. Kindt denied ever being alone with Ava in his bedroom, lying on top of Ava, or touching her privates. In reference to Sally's mother's allegations, Kindt stated that Ava's shoes were untied, and while he tied her shoes, Ava put her leg on top of his shoulder.

¶12    The jury found Kindt guilty of both repeated sexual assault of the same child and incest with a child for his actions against Ava. The circuit court

ordered concurrent sentences of three years' initial confinement followed by six years' extended supervision on each count.

¶13    In June 2019, Kindt filed a WIS. STAT. § 974.02 motion for a new trial.  As bases for relief, Kindt's motion alleged ineffective assistance of defense counsel on numerous grounds, prosecutorial misconduct, cumulative error, and the erroneous admission of other-acts evidence.  The circuit court held a ***Machner***[5] hearing on the motion in March 2021.  At that hearing, defense counsel and Dr. David Thompson, a child sexual assault forensic psychologist, testified.[6]  In a written decision and order, the court denied Kindt's motion for a new trial in its entirety.  Kindt appeals.

## DISCUSSION

¶14    On appeal, Kindt repeats the arguments he made in his WIS. STAT. § 974.02 motion.  He argues eight bases, discussed in detail below, for this court to conclude that defense counsel provided constitutionally ineffective assistance at his trial.  Further, he makes three additional stand-alone claims:  (1) the prosecutor engaged in prosecutorial misconduct; (2) the circuit court erroneously admitted other-acts evidence; and (3) he should receive a new trial in the interest of justice.

### I.  Ineffective Assistance of Counsel

¶15    To demonstrate constitutionally ineffective assistance of counsel, Kindt must establish *on each of his claims* both that defense counsel performed

---

[5] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[6] Kindt did not testify, but he filed an affidavit with the circuit court prior to the hearing.

deficiently and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether a defendant has been denied constitutionally effective assistance of counsel is a mixed question of law and fact. *State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838. We will not overturn a circuit court's findings of fact unless those findings are clearly erroneous. *Id.* We review de novo whether Kindt established that his counsel performed deficiently and whether counsel's deficient performance prejudiced his defense. *See id.*

¶16 To demonstrate deficient performance, Kindt "must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Shata*, 2015 WI 74, ¶56, 364 Wis. 2d 63, 868 N.W.2d 93 (citations omitted). "[T]he required test is that counsel must be 'adequate.'" *State v. Williquette*, 180 Wis. 2d 589, 605, 510 N.W.2d 708 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995). "This does not mean the best counsel that might have tried the case, nor the best defense that might have been presented." *Id.* In considering ineffective assistance claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "counsel is strongly presumed to have rendered adequate assistance." *Strickland*, 466 U.S. at 689-90.

¶17 To establish prejudice, Kindt "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *See Savage*, 395 Wis. 2d 1, ¶32 (citation omitted). "In other words, we examine whether there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *State v. Sholar*, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). However, Kindt "need not prove the outcome would 'more likely than

7

not' be different in order to establish prejudice." *See id.*, ¶44 (citation omitted). "A court need not address both components of [the ineffective assistance] inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

### A. Failure to Conduct an Appropriate Voir Dire

¶18    Kindt first contends that defense counsel was ineffective during voir dire by failing to "ask a single question of any juror regarding experience with sexual abuse." According to Kindt, questions like this are important in cases involving sexual abuse of children because "jurors have strong opinions regarding" child sexual assaults, and those jurors with "past experiences, as a victim, parent, or otherwise, with respect to such allegations, often formulate strong negative feelings towards the accused." Kindt asserts that defense counsel's failure was revealed when "at least one juror who was not objectively impartial" was seated on the jury.

¶19    Kindt is referencing the fact that during jury deliberations, the circuit court received a message from the jury stating: "One of our jurors was a victim of a sexual assault as a child and did not disclose it during the initial questioning of prospective jurors. Is that an issue?" After discussing the issue with Kindt, defense counsel informed the court that Kindt had elected not to seek a mistrial and asked that the jury continue deliberations.

¶20    As an initial matter, we agree with the State that a juror is not necessarily biased because he or she was a victim of childhood sexual abuse. A defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the United States and Wisconsin Constitutions as well as principles of due process. *State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999); U.S.

CONST. amends. VI, XIV; WIS. CONST. art. I, § 7. All jurors, however, are presumed to be impartial, *State v. Gilliam*, 2000 WI App 152, ¶5, 238 Wis. 2d 1, 615 N.W.2d 660, and a prior sexual assault does not preclude the victim from serving on a jury, *see State v. Erickson*, 227 Wis. 2d 758, 777, 596 N.W.2d 749 (1999).

¶21 As to Kindt's specific claim, we disagree that defense counsel performed deficiently by not asking if the jurors had experience with childhood sexual abuse because the circuit court had already engaged prospective jurors on this issue. During voir dire, after the court read the prospective jurors the Information and informed them of the issues at trial, the court stated,

> Knowing the subjects, does anybody have experience or a concern of listening to the evidence involving those counts, processing that evidence, listening to my instructions on the law, rendering a fair and impartial decision? If you have had such experience or you believe you will have difficulty in addressing the issues associated with the charges, we need to talk about it. I need you to raise your hand.

The court then added: "These are delicate topics. What we're trying to determine[,] whatever it is that causes you to raise your hand[,] would it affect your ability in this case?" Three of the prospective jurors raised their hands, the court engaged in a colloquy with those jurors, and all of those individuals stated that they could be impartial. The juror who eventually disclosed the past abuse did not reveal herself at that time.

¶22 In summary, the circuit court sufficiently addressed the issue of past sexual abuse with the prospective jurors during voir dire. Kindt provides no authority for his position that defense counsel should have asked the question again. Further, there was no evidence presented that cumulative questioning from defense counsel may have led the juror to disclose her previous abuse, such that

defense counsel should have been aware of a need for further questioning. Accordingly, Kindt has failed to show that counsel's representation fell below an objective standard of reasonableness. This claim fails on the deficient performance prong.

### B. *Providing Kindt with Erroneous Legal Advice Regarding a Mistrial*

¶23 Kindt's next argument is related to the first. As noted above, when the juror disclosed to the circuit court that she was a victim of childhood sexual abuse, the question posed to the court was: "Is that an issue?" At that time, defense counsel discussed with Kindt the possibility of requesting a mistrial. According to the affidavit Kindt submitted, defense counsel advised Kindt that he "would be rearrested;" "[a]dditional bond would be set;" "[t]hat [he] could lose [his] job because of the additional bond requirements; and" "[t]herefore, [he] would be sitting in jail waiting for the next trial." Kindt asserts that this erroneous legal advice caused him to not request a mistrial, despite the fact that it was "certainly foreseeable that a mistrial would have been granted, given the circumstances of the case and the juror's disclosure."

¶24 We disagree. We conclude that Kindt cannot show that defense counsel's alleged deficient performance in advising Kindt about the consequences of a mistrial was prejudicial because he cannot demonstrate that his claim of juror bias provided a sufficient ground for a mistrial and that the circuit court would have granted his request.

¶25 The decision whether to grant a mistrial is "within the sound discretion of the [circuit] court." *State v. Pankow*, 144 Wis. 2d 23, 47, 422 N.W.2d 913 (Ct. App. 1988). "The [circuit] court must determine, in light of the whole proceeding, whether the basis for the mistrial request is sufficiently

prejudicial to warrant a new trial." *State v. Bunch*, 191 Wis. 2d 501, 506, 529 N.W.2d 923 (Ct. App. 1995). Not all errors warrant a mistrial, and "the law prefers less drastic alternatives, if available and practical." *Id.* at 512. "A mistrial is appropriate only when a 'manifest necessity' exists for the termination of the trial." *State v. Adams*, 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998) (citation omitted).

¶26    In denying Kindt's postconviction claim, the circuit court explained that the "[t]he purpose of voir dire at any trial is to ensure a fair and impartial jury," and the court further recounted the steps it took to confirm that the prospective jurors would be able to "listen fairly and objectively to the evidence presented at trial and apply the law that the [c]ourt gives them at the conclusion of trial to reach a fair and impartial decision." Ultimately, the court stated, "Throughout the entirety of the trial, there was no basis to believe that any juror selected for this case had a bias, prejudice, or experience that would impact their sworn oath to listen to the evidence, the [c]ourt's instruction on the law, and render a fair and impartial decision."

¶27    We agree with the circuit court and conclude that the record strongly supports the conclusion that, if defense counsel had moved for a mistrial, the court would have denied the motion. As noted above, all jurors are presumed to be impartial, *Gilliam*, 238 Wis. 2d 1, ¶5, and that presumption extends equally to victims of childhood sexual abuse, *see Erickson*, 227 Wis. 2d at 777. Kindt has presented no evidence that this juror was, in fact, biased. *See Faucher*, 227 Wis. 2d at 717-19 (describing statutory, subjective, and objective bias). Further, other than disclosing that the past sexual abuse occurred, Kindt presented no evidence that the juror shared information related to her past sexual abuse that may have biased or prejudiced the other jurors and impacted the verdict. Kindt

has failed to demonstrate that his claim of juror bias provides a sufficient ground for a mistrial, and, accordingly, he cannot show a reasonable probability that the circuit court would have granted a mistrial had he requested one. This claim fails on the prejudice prong.

### C. Failure to Object to Improper Vouching by the Prosecutor

¶28 Kindt next argues that defense counsel was constitutionally ineffective for failing to object to instances of alleged prosecutorial misconduct. Kindt asserts that multiple statements the prosecutor made during opening statement and closing argument served to vouch for the truthfulness of Ava and Sally in violation of *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).[7] Under *Haseltine*, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Id.* at 96.

¶29 We agree with the State that Kindt has forfeited this claim because it is inadequately developed. In his brief-in-chief, Kindt recounts every statement of alleged improper vouching that the prosecutor made at trial that he deems objectionable. Kindt certainly develops a claim that the prosecutor engaged in vouching, but he fails to properly develop a claim that defense counsel erred by not objecting to those statements at trial under either prong of the *Strickland* test. In reply, Kindt does the same, simply repeating his argument that vouching

---

[7] "A prosecutor may comment on the evidence, argue to a conclusion from the evidence, and may state that the evidence convinces him or her and should convince the jury." *State v. Lammers*, 2009 WI App 136, ¶16, 321 Wis. 2d 376, 773 N.W.2d 463. In contrast, "[i]mproper vouching occurs when a prosecutor expresses [his or] her personal opinion about the truthfulness of a witness or when [he or] she implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000).

occurred but completely failing to explain how defense counsel performed deficiently or how his performance prejudiced Kindt. At best, Kindt makes bare, conclusory statements that defense counsel's "reticence and failure to object were not found in any reasonable strategy" and that the circuit court's conclusion that Kindt was not prejudiced "was unsupported by a review of the trial transcript."[8] Kindt's argument that vouching occurred does not reach the dual requirements of *Strickland* in any meaningful way; thus, in order for us to decide this issue, we would be required to develop these arguments. However, we cannot serve as both advocate and judge. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We therefore deny this claim as insufficiently developed.

### D. *Failure to Object to Prosecutor Eliciting Vouching Testimony from Witnesses*

¶30 Along those same lines, Kindt argues that defense counsel performed deficiently by failing to object to the prosecutor eliciting "opinions from witnesses, which vouched for the validity of other witness[es]' opinions, reputations and methodology employed." In particular, Kindt argues that the prosecutor asked Pakkala, a police officer, questions meant to endorse Sickel's forensic interview procedure. For example, after confirming that Pakkala "had

---

[8] We note, for the record, that prior to opening statements, the circuit court advised the jury that opening statements are not evidence. The court later instructed the jury: "You are to decide the case solely on the evidence offered and received at trial." The court further explained to the jury that "[r]emarks, the comments of attorneys are not evidence. If the remarks suggest certain facts not in evidence, you are to disregard that suggestion." Finally, the court issued another warning—similar to the warning before opening statements—prior to closing arguments: "You should consider closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence. Draw your own conclusions from the evidence and decide upon your verdict according to the evidence and under these instructions." "These instructions, which we presume the jurors followed, alleviate the likelihood that jurors placed any significant weight on the prosecutor's comments other than the weight that came from their own independent examination of the evidence." *See **State v. Miller***, 2012 WI App 68, ¶22, 341 Wis. 2d 737, 816 N.W.2d 331 (footnote omitted).

training with respect to the interviewing of children," the prosecutor asked whether Sickel's "technique … conform[ed] with the training [Pakkala had] received." Pakkala said that it did. Kindt also alleges that the prosecutor elicited opinion testimony from Jourdan that "gave the stamp of approval for Sickel's forensic interviewing technique."

¶31 The prosecutor also asked Lockwood questions about Sickel. Lockwood's testimony revealed that she "always had good feedback" on Sickel from "law enforcement [and] advocates" and that Sickel "was a very experienced interviewer." Further, Kindt claims that defense counsel failed to object to Lockwood's testimony that "misled the jury regarding false reports of sexual abuse." Lockwood testified that she had handled or overseen thousands of reports of sexual assault during her over thirty-year career and that she had personally experienced "perhaps two occasions" where the reports were false.

¶32 Finally, Kindt argues that defense counsel failed to object to Ava's "self-serving testimony, which was elicited by the prosecutor." In particular, the prosecutor asked Ava, in different iterations: "Did you tell [Sickel] the truth?" Ava responded that she had told the truth regarding Kindt "touching [her] in places he shouldn't have been."

¶33 We agree with the State that Kindt appears to argue that the above testimony constituted prohibited vouching under *Haseltine*.[9] Again, "*Haseltine* prohibits a witness from testifying that another witness is telling the truth at trial."

---

[9] If Kindt did not mean to argue that *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), prohibited the witnesses' testimony, then he has failed to cite any other legal authority for his position.

*State v. Snider*, 2003 WI App 172, ¶27, 266 Wis. 2d 830, 668 N.W.2d 784. "The *Haseltine* rule is intended to prevent witnesses from interfering with the jury's role as the 'lie detector in the courtroom.'" *Snider*, 266 Wis. 2d 830, ¶27 (citation omitted). "To determine whether expert testimony violates this standard, this court will examine the testimony's purpose and effect." *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993). Further, even if a *Haseltine* violation occurred, it is only reversible error where the testimony "creates too great a possibility that the jury abdicated its fact-finding role" in relation to the witness or failed independently to find the defendant's guilt. *Haseltine*, 120 Wis. 2d at 96.

¶34     Under the circumstances, we also agree with the State that the testimony in question does not appear to implicate the *Haseltine* rule. Pakkala and Jourdan were not testifying about either Sickel's or Ava's credibility. Instead, the answers elicited by the prosecutor addressed Sickel's interview techniques—in particular, whether those techniques were appropriate based on Pakkala's and Jourdan's own training and experience—and did not address anyone's truthfulness or otherwise invade the province of the jury.[10]  *See State v. Maday*, 2017 WI 28, ¶39, 374 Wis. 2d 164, 892 N.W.2d 611. Accordingly, these questions are not prohibited by *Haseltine*.

---

[10] We also note, for the record, that defense counsel *did* object when the prosecutor asked Jourdan the following question: "Would you indicate the observations you made of Kristie Sickel, were they in accord with what is supposed to happen doing child interviews?" The circuit court overruled the objection, stating that "[i]t goes to the weight [of the evidence]. You can cross[-examine] her on it." Further, the prosecutor asked Jourdan whether she found it "odd," "[b]ased on [her] experience in interviewing children and observing these interviews," that Ava would repeatedly state that "nothing had happened" multiple times during her interview. Defense counsel also objected to that question—twice—and the court eventually overruled that objection. Thus, defense counsel did not fail entirely to object to the prosecutor's questions.

¶35 As to Lockwood, we conclude that her testimony also did not state her opinion or her belief regarding the truthfulness of Sickel's or Ava's testimony. Her statements about Sickel were based on her experience working with Sickel in a professional setting, not whether Sickel was telling the truth. Further, Lockwood did not specifically opine on the truth of Ava's allegations or whether Ava was making a false report against Kindt; instead, her testimony regarding false reports in general was based on her experience as the former director of the Sexual Assault Center in Brown County.

¶36 Finally, as to Ava's "self[-]serving testimony," we also conclude that *Haseltine* is not implicated. The holding in *Haseltine* does not prohibit a witness from testifying that he or she is telling the truth. *See Snider*, 266 Wis. 2d 830, ¶27. Accordingly, defense counsel's failure to assert a *Haseltine* objection to any of the testimony discussed above did not fall below an objective standard of reasonableness. This claim fails on the deficient performance prong.

### E. Failure to Obtain an Expert Witness

¶37 Kindt next argues that defense counsel was constitutionally ineffective for not hiring an expert on child sexual abuse to testify at trial. In his postconviction affidavit, Kindt alleged that defense counsel "advised [Kindt] that he would obtain an expert witness to address issues relating to accusations of child sexual assault" but that defense counsel "never explained" why this did not occur. At the *Machner* hearing, Kindt called Thompson, an experienced child sexual assault forensic psychologist, to testify. Thompson explained how external influences may have influenced the victims' versions of the events and that Sickel deviated from best-practice forensic interviewing techniques. As a result, Kindt claims that Thompson's testimony—or at least similar testimony from a defense

expert—"would have had [a] direct impact on the reliability of the outcry by the two alleged victims."

¶38    Defense counsel testified, however, that he had discussed "possibly retaining an expert" with Kindt during his representation but that "[m]oney was a factor." Defense counsel explained: "I know that he and his wife had looked into it and I looked into it and they had a friend that looked into it to get a psychologist or an expert to assist in the case with regards to false reporting and assessing the child's interview and all of that." However, according to defense counsel, retaining an expert was not "affordable for Mr. Kindt, he didn't have the money for that."

¶39    In denying Kindt's postconviction motion for a new trial, the circuit court found, based on the *Machner* hearing testimony, that defense counsel did not retain an expert witness because Kindt could not afford one. In response to Kindt's argument that defense counsel "should have requested the [c]ourt authorize the funds necessary to retain a defense expert at County expense," pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985), the court explained that

> [w]hile in an ideal world the [c]ourt would consider funding a defendant's defense, the likelihood of [defense counsel] securing an expert from any other funding source than Kindt is a non starter. At the time of this trial and beyond, [c]ourt[]s have labored under the intense pressure of attempting to secure attorneys for defendants and have been generally unsuccessful due to scant financial resources and an unwillingness of counsel to work pro bono in complex and serious criminal cases. The fact that there was insufficient financial resource[s] to retain a defense expert is a frustrating reality. [Defense counsel] was not ineffective for failing to retain an expert that was not going to work for free, and whose bill would not be paid.

The court further found, however, that defense counsel's "aggressive cross[-]examination of the State's witnesses certainly raised question as to the credibility or believability of the evidence presented in the State's case in chief." Accordingly, the court determined that defense counsel was not ineffective for failing to obtain an expert.

¶40 We agree with the circuit court's conclusion. The court's findings, that Kindt could not afford an expert and that the court would not have provided him funds to hire one, are supported by the record and, accordingly, are not clearly erroneous. *See State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. Kindt does not argue that these findings are clearly erroneous, but in reply, he simply reiterates that defense counsel "had assured him that an expert would be secured." This claim fails on the deficient performance prong.

*F. Introduction of Vouching Testimony*

¶41 Kindt next claims that defense counsel was constitutionally ineffective for asking witnesses questions at trial that actually resulted in vouching testimony in violation of *Haseltine*. According to Kindt, "[o]n cross-examination [defense counsel] repeatedly violated the cardinal rule of courtroom litigation, to wit: 'Never ask a question for which you do not know the answer.' His efforts allowed witnesses to introduce otherwise prohibited opinions and statements." In particular, Kindt explained that during Ava's mother's cross-examination, defense counsel asked whether Ava "generally ha[s] a reputation for being dishonest" or "being untruthful when you ask her things." Ava's mother responded, "No," to both questions. Kindt argues that "[i]t goes without saying that any juror would place significant reliance upon a victim's own mother's testimony that her

daughter had a reputation for being honest and truthful" and that "elicitation of this testimony is indefensible."

¶42     Further, Kindt notes that defense counsel "elicited Pakkala's opinion that [Sally's] description of the ["butter"] event was a sexual assault."[11]   In addition, Kindt argues that defense counsel erred by asking Sickel questions to determine whether Ava was fabricating.  For example, defense counsel asked, "[Ava] could have been afraid because she was lying about this; correct? Possible?"  Sickel responded, "There's no reason for me to believe that."  Defense counsel then asked, "But that's a possibility; correct?"  Sickel again stated, "Like I said, there's no reason for me to believe that."[12]  Finally, when Lockwood testified regarding the small number of false reports of sexual assault she had encountered during her career, Kindt alleges that defense counsel performed deficiently by failing to question Lockwood regarding how a sexual assault report is determined to be false as opposed to unproven.

¶43     Again, Kindt's arguments on this issue are insufficiently developed, as they are conclusory and lack citations to legal authority.  *See* ***Pettit***, 171 Wis. 2d at 646-47.  Further, Kindt fails entirely to argue how defense counsel's alleged failures were prejudicial.  Nevertheless, we agree with the State that any alleged

---

[11]  At one point in Kindt's brief-in-chief, he states that defense counsel asked Sickel this question, while at another point in his brief, Kindt references this testimony as coming from Pakkala.  Our review of the record reveals that this was Pakkala's testimony, not Sickel's.

[12]  At trial, these questions from defense counsel actually elicited an objection from the State based on the fact that "[t]his witness is not in a posture to testify about the credibility of another person."  In overruling the objection, the circuit court stated: "I'm not sure that the question … relates to credibility.  It sounds to me as if the question relates to motive why a person would do this.  And if the witness is able to formulate an answer, or an opinion based on her interview, she can answer the question."

deficient performance by defense counsel was not prejudicial. Through defense counsel's questioning, the jury learned that Ava's mother did not think that Ava had a reputation for being dishonest, which is not an unusual statement for a mother to make about her child. It is therefore unlikely that the jury would have given Ava's mother's testimony particular consideration such that the result of the proceeding would have been different had the jury not heard that testimony. As to the testimony elicited from Pakkala, despite Kindt's assertion that Pakkala stated that the incident described by Sally "was a sexual assault," our review of the record reveals that Pakkala stated only that it "[c]ould have been" a sexual assault but that she did not know because she "wasn't there." This claim fails on the prejudice prong.

¶44 As to the question posed to Sickel, we disagree that Sickel's answer involved prohibited vouching testimony in violation of *Haseltine*. Defense counsel was asking Sickel's opinion about the reason Ava might have been afraid. Sickel's answer did not provide an opinion regarding whether Ava was telling the truth. Her response merely expressed that she did not have "reason … to believe" Ava was afraid specifically because she was possibly lying. As to Lockwood—which we addressed previously, *see supra* ¶¶31, 35—her testimony about false reporting did not implicate *Haseltine*. Accordingly, we do not see how defense counsel's failure to elicit follow-up testimony on that issue would somehow violate *Haseltine*. To the extent Kindt is arguing that defense counsel's questions or lack of questions were bad trial strategy, Kindt does not sufficiently develop that claim. Nevertheless, our "scrutiny of counsel's performance [is] highly deferential," and counsel must only be "adequate," not perfect. *See Strickland*, 466 U.S. at 689-90; *Williquette*, 180 Wis. 2d at 605. This latter claim fails on the deficient performance prejudice prong.

### G. Introduction of Other-Acts Evidence

¶45    Kindt also argues that defense counsel was constitutionally ineffective for seeking, during a motion in limine hearing, to introduce testimony about a third child victim to challenge Ava's credibility.  Ava had told Sickel that Kindt had also assaulted a third child.  Recognizing the hearsay concern, the prosecutor explained at the pretrial hearing that she "asked the police department to just excerpt that portion" of Ava's forensic interview, as the State "did not bring [an other-acts] motion with respect to that [third] person."  Defense counsel objected to the removal of that portion of the interview, noting that the defense expected to introduce testimony that an assault of a third victim never happened, which the defense would then use to impeach Ava's credibility.

¶46    After hearing arguments, the circuit court determined that defense counsel was allowed to attack Ava's credibility in this manner and that the hearsay statement would remain in the video recording.  Likely foreseeing this challenge on appeal, the prosecutor then stated: "[B]ecause this is other acts that the State has not brought, … I'd like counsel to put on for strategic reasons [why] they want this information put before the [c]ourt because the jury is going to be heard [sic] that he sexually assaulted a third person."  Defense counsel then consulted with Kindt off the record and stated:

> I talked to my client about this part of the tape.  We've reviewed it.  We have talked about it.  My client understands that there would be a third person that would be implicated against him as far as an alleged sexual assault is concerned, but he wants this information to come in, and he understands the ramifications of this.

¶47    The record is therefore clear that Kindt both agreed with and authorized defense counsel's trial strategy.  *See* **Strickland**, 466 U.S. at 691 ("The

21

reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). We agree with the State that "Kindt was made fully aware by the prosecutor, the [circuit] court, and his attorney of the obvious drawbacks of this strategy," but Kindt, nevertheless, insisted that he wanted information pertaining to a third sexual assault to come before the jury. He cannot now argue that defense counsel was ineffective for following this strategy. In reply, Kindt argues that "defense counsel should not have deferred to his client's wishes, but rather, should have forgone the introduction of this very damaging testimony." However, he fails to present any legal authority in support of his position that defense counsel should have ignored his client's instructions under these circumstances. This claim fails on the deficient performance prong.

## H. Failure to Object to Unnoticed Expert Testimony

¶48    Kindt's final challenge on ineffective assistance of counsel grounds relates to defense counsel's alleged failure to object "to the un-noticed expert opinion testimony of Pakkala and Jourdan."[13] As discussed above, Kindt argues that "[t]heir testimony was substantive in nature and constituted improper vouching." *See supra* ¶30. Kindt claims that only Lockwood was identified as the

---

[13] Again, our review of the record reveals that defense counsel *did* object to Jourdan's testimony on the basis that Jourdan was not an expert, stating, "I don't know she's qualified to answer these questions. These are questions for a forensic interviewer." The circuit court overruled the objection, noting again that defense counsel could address it on cross-examination. Then, on cross-examination, defense counsel did question Jourdan and confirmed that she was not a "forensic interviewer," that she had just gone "to some trainings and things like that," and asked pointed questions regarding her understanding of forensic interview techniques and their reliability.

State's expert, but Pakkala and Jourdan nevertheless provided expert opinions regarding allegations of child abuse and forensic interviewing techniques.

¶49    We conclude that this specific argument is insufficiently briefed by Kindt and therefore does not merit our consideration.  Again, Kindt's argument focuses on the fact that the objectionable testimony occurred—Pakkala's and Jourdan's testimony about Sickel's interview techniques—rather than on how defense counsel's failure to object based on unnoticed expert testimony satisfied either *Strickland* prong, especially the prejudice prong.  In addition, Kindt cites no legal authority regarding expert testimony or the notice requirement in support of this claim.  As noted previously, we will not develop these arguments for Kindt on appeal.  *See Pettit*, 171 Wis. 2d at 646-47.  We deny this claim as insufficiently developed.

## II.  Prosecutorial Misconduct

¶50    Apart from his claims of prosecutorial misconduct made under the ineffective assistance of counsel umbrella, Kindt also asserts a stand-alone claim of prosecutorial misconduct.   He argues that the prosecutor engaged in "unacceptable conduct which deprived the defendant of a fair trial."  For example, he claims that during closing argument, the prosecutor "improperly elicited sympathy for the victims" by stating: "[Ava] got nothing good out of it.  She doesn't see some people that she might want to keep seeing, yet, two brave, little girls came forward, and they deserve the respect of this community for doing that."

¶51    Kindt also alleges that the prosecutor misstated the law and improperly shifted the burden of proof by stating: "You have to find that [Ava] lied if you are going to find [Kindt] not guilty because [Ava] took the stand and

[that] had nothing to do with Kristie Sickel. [Ava] took the stand and told you directly what happened in detail." The prosecutor further stated, "But you can't find [Kindt] not guilty unless you find that she was untruthful to you as she took the stand." In addition, Kindt claims that the prosecutor made improper statements that constituted speculation and opinion testimony:

> You saw her. You saw she was uncomfortable, and it wasn't because she's being intimidated to saying [sic] these things. It was because she was having a hard time telling the truth about what her [relative], someone who she should have been able to trust, was doing to her when she was over there ….

Finally, the prosecutor told the jury: "And [Sally], who is 4 at the time, is involved with some other kids touching at daycare. Gosh, I wonder where she learns sexual inappropriate touching. So that happens."[14]

¶52 Kindt admits, however, that defense counsel failed to object to these "wrongful acts of the prosecutor." Accordingly, as the State argues, these claims may be properly reviewed under the ineffective assistance of counsel rubric—as argued above—or these claims may be reviewed for plain error. "The plain error doctrine allows appellate courts to review errors that were otherwise waived by a party's failure to object." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77; WIS. STAT. § 901.03(4). Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *Jorgensen*, 310 Wis. 2d 138, ¶21 (citation omitted). The error

---

[14] Kindt also argues that the prosecutor "reinforced defense counsel's errors in his cross-examination of Sickel, by repeating her responses during closing" and "exacerbated defense counsel's devastatingly damaging cross-examination of [Ava's] mother by repeating her answers during closing." Kindt does not explain, however, how merely repeating testimony that was already in evidence and presented to the jury was misconduct on the prosecutor's part.

must be "obvious and substantial," and "[c]ourts should use the plain error doctrine sparingly." *Id.* (citation omitted). "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23. We review allegations of plain error de novo. *State v. Bell*, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750.

¶53    Kindt does not argue plain error, nor does he cite any legal authority for his claims that the prosecutor's statements actually constituted prosecutorial misconduct. He simply makes conclusory assertions that

> [t]he impermissible remarks and actions by the prosecutor were frequent and consistent. They permeated the entire trial. [The prosecutor's] actions were not isolated, nor were they of minimal import. The prosecutor exacerbated the prejudice by improperly interjecting her own opinions. On those occasions, she was not subject to cross-examination and took advantage of the jury's perception that she wore the mantle of authority. The conduct so infected the jury's decision that the defendant was denied the right to a fair trial.

In reply, Kindt acknowledges that "specific reference to the plain error doctrine is not found in [his brief-in-chief]," but he claims that he "alleges that the prosecutor's misconduct deprived [him] of a fair trial" and, therefore, he "effectively raised the plain error doctrine, although not specifically designating it as having been derived from WIS. STAT. § 901.03(4)."

¶54    Kindt's arguments do not go far enough. Kindt's plain error argument in his brief-in-chief is entirely undeveloped and lacks citation to sufficient legal authority. *See Pettit*, 171 Wis. 2d at 646-47. To the extent that Kindt attempts to develop an argument for plain error in his reply brief, that argument comes too late. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we need not address arguments raised

25

for the first time in a reply brief). Accordingly, we reject Kindt's prosecutorial misconduct claim based on plain error as undeveloped.

## III. Other-Acts Evidence

¶55 Kindt next argues that the circuit court erred by admitting Sally's allegation—that Kindt rubbed "butter" on her bare bottom—as other-acts evidence. The State sought admission of Sally's allegation to prove intent for sexual gratification involving young girls (particularly young girls who are relatives of Kindt), absence of mistake, and opportunity. "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but such evidence may be admissible "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." WIS. STAT. § 904.04(2)(a).

¶56 We apply a three-prong test when assessing the admissibility of other-acts evidence. *See State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). First, the evidence must be offered for a permissible purpose under WIS. STAT. § 904.04(2)(a). *Sullivan*, 216 Wis. 2d at 772. "[C]ontext, credibility, and providing a more complete background are permissible purposes under [§] 904.04(2)(a)." *State v. Marinez*, 2011 WI 12, ¶27, 331 Wis. 2d 568, 797 N.W.2d 399. Second, the evidence must be relevant under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. Third, the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73. "[A]longside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a

26

'greater latitude of proof as to other like occurrences.'" ***State v. Davidson***, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted); *see also* § 904.04(2)(b).

¶57 On appeal, Kindt maintains that it was error to allow Sally's allegations to be presented to the jury. According to Kindt,

> [t]he two events were dissimilar in virtually every respect, including the acts themselves, the age of the children, the conduct of the defendant, and the lack of corroboration. It is further asserted that there was no probative value for admission of the acts, and that any theoretical purpose was far outweighed by the prejudicial effect.

In particular, he argues that the counts in the Information alleged over-the-clothing touching of the vaginal area, while the other-acts allegation involved rubbing "butter" on a child's exposed buttocks. He also claims that the girls are different ages and that there is no indication of when Sally's allegation actually occurred.

¶58 The decision whether to admit or exclude other-acts evidence is addressed to the sound discretion of the circuit court. ***State v. Hunt***, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771. "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." ***Id.*** Unless the ruling on admitting other-acts evidence is a decision "that no reasonable judge could make," we will uphold it on review. *See **State v. Payano***, 2009 WI 86, ¶52, 320 Wis. 2d 348, 768 N.W.2d 832.

¶59 We conclude that the circuit court did not erroneously exercise its discretion by admitting Sally's testimony. First, the court reasonably determined that the evidence was offered for a permissible purpose, namely, motive, plan, and

absence of mistake, among other purposes.  *See **Sullivan***, 216 Wis. 2d at 772-73; *see also **Marinez***, 331 Wis. 2d 568, ¶25 (explaining that this first step "is not demanding" and has been met "[a]s long as the State and circuit court have articulated at least one permissible purpose for which the other-acts evidence was offered and accepted").  We also note that under the circumstances of this case, the other-acts evidence was properly admitted for context given that it was Sally's allegations that prompted a renewed investigation into the allegations that Kindt had inappropriate sexual contact with Ava.

¶60     The circuit court next reasonably determined that the evidence was relevant.  *See **Sullivan***, 216 Wis. 2d at 772-73.  To be relevant, the evidence must "relate[] to a fact or proposition that is of consequence" and must have "a tendency to make a consequential fact more probable or less probable."  ***Id.*** at 785-86; *see also* WIS. STAT. § 904.01.  "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act," ***State v. Gray***, 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999), which "depends partially upon its nearness in time, place, and circumstance to the alleged crime or element sought to be proved," ***Davidson***, 236 Wis. 2d 537, ¶75 (citation omitted).

¶61     We agree with the State that when taking into account the greater latitude rule, the circuit court's determination that Ava's and Sally's allegations were sufficiently similar was reasonable.  While there were obvious differences between the acts, they were similar enough to be probative: both victims were prepubescent girls; both victims were related to Kindt; the alleged acts involving both victims occurred in Kindt's home while he was caring for the girls; and both occurred during the same approximate timeframe.  According to the court, Kindt's conduct in allegedly applying a "butter"-like substance to a toilet-trained four year old was "at a minimum bizarre" and "there is nothing in the presentation to

28

suggest that there was any basis for it other than some purpose such as a sexual purpose." Thus, according to the State, "the court determined that the evidence could be offered to show, for example, that Kindt had a motive—i.e., fulfillment of sexual desires for prepubescent girls—and opportunity—when he is in his home with access to a prepubescent girl, he will act on his desires."

¶62 Finally, as to the third prong of the *Sullivan* analysis, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." WIS. STAT. § 904.03. Prejudice, however, is not merely harm to the opposing party's case, "but rather whether the evidence tends to influence the outcome of the case by 'improper means,'" *Payano*, 320 Wis. 2d 348, ¶87 (citation omitted), "or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case," *Sullivan*, 216 Wis. 2d at 790. The burden is on Kindt to establish that the evidence's probative value was substantially outweighed by the danger of unfair prejudice. *See Payano*, 320 Wis. 2d 348, ¶80.

¶63 We agree with the circuit court that Sally's testimony was not unfairly prejudicial. According to the court, it considered the "bizarre nature" of Sally's allegation, but it concluded that "there is nothing normal or natural about [her] allegations" such that they could be considered "separate and apart from the context of the overall case." The court continued, "It's not introducing something for shock value or something that's going to cause the jury to be sympathetic. Rather, it's being offered for the express purpose of showing that pattern, that concept, that context of exposure, and the other areas in which I've determined that it is specifically probative."

¶64 The circuit court also ordered that a cautionary instruction be given to the jury regarding the proper basis for considering the other-acts evidence. Such cautionary instructions have been found to "substantially mitigate any unfair prejudicial effect." *State v. Hurley*, 2015 WI 35, ¶89, 361 Wis. 2d 529, 861 N.W.2d 174; *see also State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158 ("We presume that jurors follow the instructions given by the court."). Accordingly, Kindt has not met his burden to establish that Sally's testimony was unfairly prejudicial.

¶65 Therefore, given the application of the greater latitude rule in this case, we conclude that the circuit court properly exercised its discretion in admitting Sally's evidence, and Kindt's arguments do not show otherwise.

## IV. New Trial in the Interest of Justice

¶66 Finally, Kindt argues that he is entitled to a new trial in the interest of justice based on the cumulative effect of defense counsel's and the prosecutor's alleged errors. WISCONSIN STAT. § 752.35 provides us broad powers of discretionary reversal. *See Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). We may exercise that power where it appears from the record that (1) "the real controversy has not been fully tried"; or (2) "it is probable that justice has for any reason miscarried." Sec. 752.35. If we find that "justice has for any reason miscarried," then we must also conclude that there is a substantial probability of a different result on retrial. *See State v. Maloney*, 2006 WI 15, ¶14 n.4, 288 Wis. 2d 551, 709 N.W.2d 436. We "approach[] a request for a new trial with great caution." *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). Reversals in the interest of justice should be "rare and reserved

30

for exceptional cases." *State v. Kucharski*, 2015 WI 64, ¶41, 363 Wis. 2d 658, 866 N.W.2d 697.

¶67    According to Kindt, Wisconsin case law has "consistently recognized that, while an individual error by counsel may not require a new trial," when considering the prejudice prong, "the cumulative effect of multiple mistakes may." *See Thiel*, 264 Wis. 2d 571, ¶59.  Further, he argues that our case law has "also determined that the cumulative effect of errors may justify a new trial in the interest of justice." *See State v. Davis*, 2011 WI App 147, ¶35, 337 Wis. 2d 688, 808 N.W.2d 130.  According to Kindt, "[t]he actions by the prosecutor, pervasive errors by [defense] counsel, and the erroneous admission of other[-]acts evidence when examined individually justify reversal in this case.  However, when considering all of these errors, there can be no question that their cumulative effect denied Mr. Kindt a fair trial."

¶68    We disagree.  As our supreme court explained in *Thiel*, "a convicted defendant may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial.  A criminal defense attorney's performance is not expected to be flawless.  The Sixth Amendment does not demand perfection." *Thiel*, 264 Wis. 2d 571, ¶61.  Instead, "each alleged error must be deficient in law—that is, each act or omission must fall below an objective standard of reasonableness—in order to be included in the calculus for prejudice." *Id.*

¶69    Looking at the entire trial, we cannot say that Kindt's trial was so infected with error as to amount to a deprivation of his right to a fair trial.  We agree with the State that "[t]his was a case in which the jury heard from the victim and the defendant, and, for all the sound reasons the prosecutor identified in closing argument, they believed the victim's testimony and not the defendant's."

The jury's verdict was reliable. Kindt may not obtain a new trial in the interest of justice simply by rehashing arguments we have already rejected. *See **Mentek v. State***, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("We have found each of [the defendant's] arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero."). Under the circumstances, we conclude that Kindt has failed to demonstrate that this is a rare, exceptional case warranting a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.